WALL & LONDON LLC
Zachary R. Wall, Esquire
15 S. Haddon Avenue, Suite 4
Haddonfield, New Jersey 08033
P: (856) 428-1480 F: (856) 428-1436
E-mail: zwall@wallandlondon.com
*Attorneys for the Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JESSICA EILERT; | |
| Plaintiff, | |
| | CASE NO.: |
| v. | |
| LOYAL SOURCE GOVERNMENT SERVICES, LLC; UNITED STATES COAST GUARD; JEH CHARLES JOHNSON, SECRETARY, DEPARTMENT OF HOMELAND SECURITY; and JOHN DOES 1-10 (fictitious names of entities and/or individuals whose identities are presently unknown) individually, jointly, severally and/or in the alternative, | CIVIL ACTION |
| | **COMPLAINT AND JURY DEMAND** |
| Defendants. | |

The Plaintiff, JESSICA EILERT, by way of complaint against the Defendants, LOYAL SOURCE GOVERNMENT SERVICES, LLC; UNITED STATES COAST GUARD; JEH CHARLES JOHNSON, SECRETARY, DEPARTMENT OF HOMELAND SECURITY; and JOHN DOES 1-10; states as follows:

### NATURE OF ACTION

1.    This is an action by the Plaintiff as an employee of the Defendants for recovery of damages in the amount of lost wages, emotional distress, benefits, and other remuneration, including attorney's fees and costs, by reasons of the Defendants' violation

1

of the Plaintiff's rights under both common law and statutory law pursuant to the NEW JERSEY LAW AGAINST DISCRIMINATION, N.J.S.A. 10:5-1, *et seq*. ("NJLAD") and TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 ("Title VII") as amended by the PREGNANCY DISCRIMINATION ACT OF 1978 ("PDA").

2. This is an action seeking equitable and legal relief for violations of the NJLAD and Title VII, including, but not limited to, gender discrimination, pregnancy discrimination, harassment, hostile work environment, failure to provide reasonable accommodation, retaliation, and wrongful termination.

## JURISDICTION AND VENUE

3. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 1332, and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.  This action is authorized and instituted pursuant to the laws of the State of New Jersey ("NJLAD") along with federal law ("Title VII").

4. Venue is appropriately laid in the United States District Court for the District of New Jersey, Camden Vicinage, as the causes of action alleged herein occurred in this district. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of New Jersey.

## THE PARTIES

5. Upon information and belief, at all relevant times herein, Defendant LOYAL SOURCE GOVERNMENT SERVICES, LLC (hereafter "Loyal Source" and/or "Defendants") provides employment services, including healthcare clinical and support, to Government and commercial customers worldwide. Loyal Sources conducts business within the State of New Jersey and is headquartered in Orlando, Florida. Loyal Source employed the

Plaintiff.

6. Upon information and belief, Defendant Loyal Source is responsible and vicariously liable for the actions of any and all personnel and Human Resources or Leave Administration entities which participated in the adverse employment actions alleged herein (pled as "John Does 1-10").

7. Upon information and belief, at all relevant times herein, DEFENDANT UNITED STATES COAST GUARD (hereafter "USCG" and/or "Defendants") is a maritime, multi-mission service U.S. military branch. During peacetime, the USCG operates under the U.S. Department of Homeland Security, named in this Complaint as JEH CHARLES JOHNSON, SECRETARY, DEPARTMENT OF HOMELAND SECURITY ("Secretary Johnson"). The USCG was, at all relevant times herein, a de facto joint employer of the Plaintiff.

8. For the purposes of this Complaint, Defendants Loyal Source, USCG, and Secretary Johnson will be referred to collectively as "Defendants."

9. Upon information and belief, Defendants jointly developed, implemented, and enforced policies regarding employee responsibilities, benefits, discipline, and programs at the USCG Training Facility in Cape May, New Jersey.

10. Upon information and belief, Defendants shared joint control and responsibility over employee reprimands, employee terminations, employee performance evaluations, employee family and medical leaves, and employee requests for reasonable accommodation at the USCG Training Facility in Cape May, New Jersey.

11. Plaintiff JESSICA EILERT ("Ms. Eilert" and "Plaintiff") was employed by Defendants as a Dental Assistant in the Dental Clinic at the USCG Training Center in Cape May, New

Jersey from in or around September 2005 until she was unlawfully terminated on May 22, 2014. Upon information and belief, Loyal Source assumed control over the employment of Ms. Eilert, and many other civilian employees, at the Cape May Training Center, on or about July 1, 2012.

## FACTS COMMON TO ALL CAUSES OF ACTION

12. Before she was terminated, the Plaintiff was performing her job duties to the reasonable expectation of her employer. In fact, the Plaintiff had received uniformly excellent performance evaluations.

13. During the course of her employment, Plaintiff was subject to unlawful discrimination, and retaliation, because of her gender and pregnancy.

14. During the course of her employment, Plaintiff was subject to repeated and severe sexual harassment on the basis of her gender. The sexual harassment was committed by one of Plaintiff's supervisors.

15. On or about November 1, 2013, Ms. Eilert commenced a maternity leave for the then-pending birth of her son.

16. In the months leading up to her leave, Ms. Eilert requested, and was granted, the reasonable accommodation of working the "floater" dental assistant position so that she was able to continue to safely work while pregnant. The "floater" designation allowed Ms. Eilert to work a significant amount of time in the sterilization room, which entailed less physically-demanding work.

17. After an eight-week disability leave and six-week New Jersey family child-bonding leave, Ms. Eilert was able to return to work on February 25, 2014.

18. Before she returned to work, Ms. Eilert requested that she initially be placed back in the

"floater" dental assistant position so that she was able to work in the sterilization room and privately pump breast milk.

19.    Plaintiff was assured by USCG Chief Joshua Garcia ("Chief Garcia") that she would be able to work in the sterilization room and privately utilize her breast pump during work when necessary. Unfortunately, upon returning to work, Ms. Eilert learned that Chief Garcia had actually permanently placed another dental assistant, Terry Post, in the sterilization room despite the fact that, unlike Ms. Post, Ms. Eilert had a compelling medical condition that required accommodation.

20.    After her accommodation request was denied, Ms. Eilert was assigned to work solely with an individual dentist, Dr. Stella Wisner of the USCG ("Dr. Wisner").

21.    Over the next few months, Dr. Wisner consistently interfered with Ms. Eilert's need to pump breast milk for her newborn baby. Dr. Wisner would routinely begin seeing patients early and work through the lunch break, thus preventing Ms. Eilert from taking one break in the morning and one break in the afternoon to pump breast milk.

22.    Dr. Wisner complained to her USCG superiors and to Loyal Source about Ms. Eilert's need for the reasonable accommodation of breaks.

23.    Dr. Wisner began to use a stopwatch timer for Ms. Eilert's breaks and would reprimand Ms. Eilert when she was not ready to begin treating a patient the exact second that Dr. Wisner would have liked.

24.    As a result of Defendants' behavior, Ms. Eilert was not provided with enough time to adequately express breast milk and she was unable to adequately feed her baby.

25.    In response to the hostile work environment, Ms. Eilert made several complaints to both the USCG and to Loyal Source and reiterated her need for accommodation.

5

26.  Despite some insincere promises to support Ms. Eilert, nothing was ever done to effectuate a change in the hostile work environment.

27.  Defendants responded to the need for accommodation by belittling and sexually harassing Ms. Eilert.

28.  In response to a request from Ms. Eilert that she needed to pump, Chief Garcia stated that he "*knew how [to do* it]" and made a sexually suggestive gesture with his hands in a "milking" motion. As Chief Garcia made the hand gesture, he looked at Ms. Eilert's breasts and smiled.

29.  On several occasions when Ms. Eilert informed Chief Garcia that she needed a break to pump breast milk, Garcia smiled and, in a sexually suggestive manner, stated "*Do you need any help with that...*"

30.  When Ms. Eilert attempted to explain to Chief Garcia the level of stress that not being allowed to pump and effectively feed her baby was having on her mental state, Garcia flippantly responded, "*go take some medication for your anxiety.*"

31.  In March 2014, in response to complaints about Ms. Eilert's need for breaks, Plaintiff was reprimanded by the USCG Clinic Administrator who questioned her need to pump breast milk during work hours.

32.  Ms. Eilert also complained to Defendant Loyal Source employee Jeremy Hicks on several occasions via both telephone and e-mail.

33.  Instead of assisting Plaintiff, on April 9, 2014, Mr. Hicks merely wrote "*just continue to do what you're doing and be sure to be extra careful in your dealings with Dr. Wisner.*"

34.  In May 2014, Ms. Eilert was terminated without warning for alleged performance deficiencies.

6

**COUNT ONE -**
**VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION**
**N.J.S.A. 10:5-1, *et seq.*:**
**HOSTILE WORK ENVIRONMENT – SEXUAL HARASSMENT**

35.     Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in the previous paragraphs as if fully set forth herein.

36.     USCG Chief Garcia, a supervisor of Plaintiff, frequently made unwelcome comments and actions of an offensive sexual nature that created a hostile working environment for Ms. Eilert.

37.     USCG Chief Garcia repeatedly and continuously made offensive comments of a sexual nature to Ms. Eilert while she was employed with Defendants.

38.     Despite their knowledge of the harassment, Defendants failed to take any effective remedial measures.

39.     As detailed more fully above, during the course of Ms. Eilert's employment, she was subjected to a pattern and practice of repeated and blatant acts of discrimination based on her gender, which offended, embarrassed and humiliated her.

40.     The sexual harassment and actions alleged herein were made against Ms. Eilert because of her gender.

41.     The conduct complained of above by the Plaintiff was severe and pervasive enough to make a reasonable person believe that the conditions of her employment were altered and that the working environment was hostile and abusive.

42.     The conduct complained of herein did, in fact, make the Plaintiff believe that the conditions of her employment were altered and that the working environment was hostile

and abusive because of her gender.

43.    By discriminating against Ms. Eilert based on her gender, the Defendants have violated the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et. seq. ("NJLAD").

44.    The Defendants' acts were performed with malice and a reckless indifference to Plaintiff's protected rights.

45.    The alleged actions were outrageous and beyond all bounds of human decency, justifying the imposition of punitive damages against the Defendants.

46.    The actual participation and willful indifference of upper management creates liability against Defendant Loyal Source.

47.    As a result of the Defendants' intentional and outrageous actions toward Ms. Eilert, as detailed in the previous paragraphs of this Complaint, Plaintiff has suffered, and continues to suffer, extreme emotional distress, anxiety, embarrassment, humiliation, monetary, emotional, reputational, and other personal injuries.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, jointly, severally and alternatively, for compensatory damages, including damages for emotional distress, physical injury, loss of reputation and other personal injury, back pay, front pay, reinstatement with full seniority and benefits, consequential damages, punitive damages, pre- and post-judgement interest, enhancement for tax consequences, reasonable attorney's fees enhanced under the New Jersey Law Against Discrimination, costs of suit, and any other relief this Court deems just.

## COUNT TWO -
## VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION
## N.J.S.A. 10:5-1, *et seq.*:
## HOSTILE WORK ENVIRONMENT – PREGNANCY DISCRIMINATION

48.    Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in the previous paragraphs as if fully set forth herein.

49.    USCG Chief Garcia, a supervisor of Plaintiff, frequently made unwelcome comments and actions of an offensive sexual nature, directly related to Ms. Eilert's pregnancy and need to express breast milk. This created a hostile working environment for Ms. Eilert.

50.    Despite their knowledge of the harassment, Defendants failed to take any effective remedial measures.

51.    As detailed more fully above, during the course of Ms. Eilert's employment, she was subjected to a pattern and practice of repeated and blatant acts of discrimination based on her pregnancy and need to express breast milk, which offended, embarrassed and humiliated her.

52.    The harassment and actions alleged herein were made against Ms. Eilert because of her pregnancy and need to express breast milk.

53.    The conduct complained of above by the Plaintiff was severe and pervasive enough to make a reasonable person believe that the conditions of her employment were altered and that the working environment was hostile and abusive.

54.    The conduct complained of herein did, in fact, make the Plaintiff believe that the conditions of her employment were altered and that the working environment was hostile and abusive because of her pregnancy and need to express breast milk.

55.   By discriminating against Ms. Eilert based on her gender, the Defendants have violated the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et. seq. ("NJLAD").

56.   The Defendants' acts were performed with malice and a reckless indifference to Plaintiff's protected rights.

57.   The alleged actions were outrageous and beyond all bounds of human decency, justifying the imposition of punitive damages against the Defendants.

58.   The actual participation and willful indifference of upper management creates liability against Defendant Loyal Source.

59.   As a result of the Defendants' intentional and outrageous actions toward Ms. Eilert, as detailed in the previous paragraphs of this Complaint, Plaintiff has suffered, and continues to suffer, extreme emotional distress, anxiety, embarrassment, humiliation, monetary, emotional, reputational, and other personal injuries.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, jointly, severally and alternatively, for compensatory damages, including damages for emotional distress, physical injury, loss of reputation and other personal injury, back pay, front pay, reinstatement with full seniority and benefits, consequential damages, punitive damages, pre- and post-judgement interest, enhancement for tax consequences, reasonable attorney's fees enhanced under the New Jersey Law Against Discrimination, costs of suit, and any other relief this Court deems just.

**COUNT THREE -**
**VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION**
**N.J.S.A. 10:5-1, *et seq.*:**
**FAILURE TO PROVIDE REASONABLE ACCOMMODATION**

60.   The Plaintiff repeats, realleges, and incorporates by reference each and every allegation

contained in the previous paragraph and Count of this Complaint as if fully set forth herein.

61. The NJLAD requires an employer to reasonably accommodate an employee's physical condition related to child birth or pregnancy.

62. A new mother's need to lactate during work hours is a protected medical condition that warrants reasonable accommodation. Pregnancy is a condition unique to women. Excluding pregnancy from reasonable accommodation coverage is discrimination based on gender. This same reasoning applies to the expression of breast milk.

63. Due to Plaintiff's physical condition and her request for accommodation, Defendants unilaterally and arbitrarily decided that Plaintiff could no longer be employed.

64. Despite Plaintiff's need for a reasonable accommodation, the Defendants refused to make any attempt to engage in an interactive process.

65. Plaintiff was a productive and successful employee and the requested accommodation did not pose any undue hardship to Defendants.

66. Defendants failed to make a good faith effort to provide Ms. Eilert with reasonable accommodations and this violated the NJLAD.

67. The discriminatory actions against the Plaintiff would not have occurred but for the fact of her gender and pregnancy.

68. The alleged allegations were outrageous and beyond all bounds of human decency, justifying the imposition of punitive damages against Defendants.

69. Defendants' acts were performed with malice and a reckless indifference to Ms. Eilert's protected rights.

70. The willful indifference and actual participation by Loyal Source's management creates

liability against the corporate Defendants.

71. Upon information and belief, there may be other John Does, to be identified through discovery, participated in or made decisions to discriminate against the Plaintiff. These John Does may be later added as named parties.

72. As a result of Defendants' intentional and outrageous actions toward Ms. Eilert, the Plaintiff has suffered, and continues to suffer, physical injuries, embarrassment, humiliation, monetary, emotional, reputational, and other personal injuries.

**WHEREFORE,** the Plaintiff demands judgment against the Defendants, jointly, severally and alternatively, for compensatory damages, including damages for emotional distress, physical injury, loss of reputation and other personal injury, back pay, front pay, reinstatement with full seniority and benefits, consequential damages, punitive damages, pre- and post-judgement interest, enhancement for tax consequences, reasonable attorney's fees enhanced under the New Jersey Law Against Discrimination, costs of suit, and any other relief this Court deems just.

**COUNT FOUR -**
**VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION**
**N.J.S.A. 10:5-1,** *et seq.***:**
**GENDER DISCRIMINATION – WRONGFUL TERMINATION**

73. Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in the previous paragraphs as if fully set forth herein.

74. Defendants discriminated against the Plaintiff by terminating her for a reason directly related to her gender.

75. The discriminatory actions against the Plaintiff would not have occurred but for the fact of her gender.

76.   The alleged allegations were outrageous and beyond all bounds of human decency, justifying the imposition of punitive damages against Defendants.

77.   Defendants' acts were performed with malice and a reckless indifference to Ms. Eilert's protected rights.

78.   The willful indifference and actual participation by Loyal Source's management creates liability against the corporate Defendants.

79.   Upon information and belief, there may be other John Does, to be identified through discovery, participated in or made decisions to discriminate against the Plaintiff. These John Does may be later added as named parties.

80.   As a result of Defendants' intentional and outrageous actions toward Ms. Eilert, the Plaintiff has suffered, and continues to suffer, physical injuries, embarrassment, humiliation, monetary, emotional, reputational, and other personal injuries.

**WHEREFORE,** the Plaintiff demands judgment against the Defendants, jointly, severally and alternatively, for compensatory damages, including damages for emotional distress, physical injury, loss of reputation and other personal injury, back pay, front pay, reinstatement with full seniority and benefits, consequential damages, punitive damages, pre- and post-judgement interest, enhancement for tax consequences, reasonable attorney's fees enhanced under the New Jersey Law Against Discrimination, costs of suit, and any other relief this Court deems just.

**COUNT FIVE -
VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION
N.J.S.A. 10:5-1, *et seq.*:
PREGNANCY DISCRIMINATION – WRONGFUL TERMINATION**

81.   Plaintiff repeats, realleges, and incorporates by reference each and every allegation

contained in the previous paragraphs as if fully set forth herein.

82. Defendants discriminated against the Plaintiff by terminating her for a reason directly related to her pregnancy and need to express breast milk.

83. The discriminatory actions against the Plaintiff would not have occurred but for the fact of her pregnancy and need to express breast milk.

84. The alleged allegations were outrageous and beyond all bounds of human decency, justifying the imposition of punitive damages against Defendants.

85. Defendants' acts were performed with malice and a reckless indifference to Ms. Eilert's protected rights.

86. The willful indifference and actual participation by Loyal Source's management creates liability against the corporate Defendants.

87. Upon information and belief, there may be other John Does, to be identified through discovery, participated in or made decisions to discriminate against the Plaintiff. These John Does may be later added as named parties.

88. As a result of Defendants' intentional and outrageous actions toward Ms. Eilert, the Plaintiff has suffered, and continues to suffer, physical injuries, embarrassment, humiliation, monetary, emotional, reputational, and other personal injuries.

**WHEREFORE,** the Plaintiff demands judgment against the Defendants, jointly, severally and alternatively, for compensatory damages, including damages for emotional distress, physical injury, loss of reputation and other personal injury, back pay, front pay, reinstatement with full seniority and benefits, consequential damages, punitive damages, pre- and post-judgement interest, enhancement for tax consequences, reasonable attorney's fees enhanced under the New Jersey Law Against Discrimination, costs of suit, and any other relief this Court

deems just.

## COUNT SIX -
## VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION
## N.J.S.A. 10:5-1, *et seq.*: RETALIATION – WRONGFUL TERMINATION

89.  Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in the previous paragraphs as if fully set forth herein.

90.  Plaintiff forwarded both verbal and written complaints of discrimination to Defendants.

91.  In retaliation for Plaintiff's complaints, Defendants refused to consider any reasonable accommodation request.

92.  In retaliation for Plaintiff's complaints, Defendants terminated Plaintiff.

93.  Defendants violated the New Jersey Law Against Discrimination by retaliating against the Plaintiff and terminating her for a reason directly related to her complaint of discrimination.

94.  The alleged allegations were outrageous and beyond all bounds of human decency, justifying the imposition of punitive damages against Defendants.

95.  Defendants' acts were performed with malice and a reckless indifference to Ms. Eilert's protected rights.

96.  The willful indifference and actual participation by Loyal Source management creates liability against the corporate Defendants.

97.  Upon information and belief, there may be other John Does, to be identified through discovery, participated in or made decisions to discriminate against the Plaintiff. These John Does may be later added as named parties.

98.  As a result of Defendants' intentional and outrageous actions toward Ms. Eilert, the Plaintiff has suffered, and continues to suffer, physical injuries, embarrassment,

15

humiliation, monetary, emotional, reputational, and other personal injuries.

**WHEREFORE,** the Plaintiff demands judgment against the Defendants, jointly, severally and alternatively, for compensatory damages, including damages for emotional distress, physical injury, loss of reputation and other personal injury, back pay, front pay, reinstatement with full seniority and benefits, consequential damages, punitive damages, pre- and post-judgement interest, enhancement for tax consequences, reasonable attorney's fees enhanced under the New Jersey Law Against Discrimination, costs of suit, and any other relief this Court deems just.

<u>**COUNT SEVEN –**</u>
<u>**VIOLATION OF TITLE VII**</u>
<u>**HOSTILE WORK ENVIRONMENT – SEXUAL HARASSMENT**</u>

99. The Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in the previous paragraph and Count of this Complaint as if fully set forth herein.

100. USCG Chief Garcia, a supervisor of Plaintiff, frequently made unwelcome comments and actions of an offensive sexual nature that created a hostile working environment for Ms. Eilert.

101. USCG Chief Garcia repeatedly and continuously made offensive comments of a sexual nature to Ms. Eilert while she was employed with Defendants.

102. Despite their knowledge of the harassment, Defendants failed to take any effective remedial measures.

103. As detailed more fully above, during the course of Ms. Eilert's employment, she was subjected to a pattern and practice of repeated and blatant acts of discrimination based on her gender, which offended, embarrassed and humiliated her.

16

104. The sexual harassment and actions alleged herein were made against Ms. Eilert because of her gender.

105. The conduct complained of above by the Plaintiff was severe and pervasive enough to make a reasonable person believe that the conditions of her employment were altered and that the working environment was hostile and abusive.

106. The conduct complained of herein did, in fact, make the Plaintiff believe that the conditions of her employment were altered and that the working environment was hostile and abusive because of her gender.

107. By discriminating against Ms. Eilert based on her gender, the Defendants have violated the Title VII of the Civil Rights Act of 1964.

108. The Defendants' acts were performed with malice and a reckless indifference to Plaintiff's protected rights.

109. The alleged actions were outrageous and beyond all bounds of human decency, justifying the imposition of punitive damages against the Defendants.

110. The actual participation and willful indifference of upper management creates liability against Defendant Loyal Source.

111. As a result of the Defendants' intentional and outrageous actions toward Ms. Eilert, as detailed in the previous paragraphs of this Complaint, Plaintiff has suffered, and continues to suffer, extreme emotional distress, anxiety, embarrassment, humiliation, monetary, emotional, reputational, and other personal injuries.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, jointly, severally and alternatively, for compensatory damages, including damages for emotional distress, physical injury, loss of reputation and other personal injury, back pay, front pay, reinstatement

with full seniority and benefits, consequential damages, punitive damages, pre- and post-judgement interest, enhancement for tax consequences, reasonable attorney's fees, costs of suit, and any other relief this Court deems just.

<u>**COUNT EIGHT -**</u>
<u>**VIOLATION OF TITLE VII**</u>
<u>**HOSTILE WORK ENVIRONMENT BASED ON GENDER/PREGNANCY**</u>

112. Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in the previous paragraphs as if fully set forth herein.

113. USCG Chief Garcia, a supervisor of Plaintiff, frequently made unwelcome comments and actions of an offensive sexual nature, directly related to Ms. Eilert's pregnancy and need to express breast milk. This created a hostile working environment for Ms. Eilert.

114. Despite their knowledge of the harassment, Defendants failed to take any effective remedial measures.

115. As detailed more fully above, during the course of Ms. Eilert's employment, she was subjected to a pattern and practice of repeated and blatant acts of discrimination based on her pregnancy and need to express breast milk, which offended, embarrassed and humiliated her.

116. The harassment and actions alleged herein were made against Ms. Eilert because of her pregnancy and need to express breast milk.

117. The conduct complained of above by the Plaintiff was severe and pervasive enough to make a reasonable person believe that the conditions of her employment were altered and that the working environment was hostile and abusive.

118. The conduct complained of herein did, in fact, make the Plaintiff believe that the conditions of her employment were altered and that the working environment was hostile

and abusive because of her pregnancy and need to express breast milk.

119. By discriminating against Ms. Eilert based on her gender, the Defendants have violated Title VII of the Civil Rights Act of 1964.

120. The Defendants' acts were performed with malice and a reckless indifference to Plaintiff's protected rights.

121. The alleged actions were outrageous and beyond all bounds of human decency, justifying the imposition of punitive damages against the Defendants.

122. The actual participation and willful indifference of upper management creates liability against Defendant Loyal Source.

123. As a result of the Defendants' intentional and outrageous actions toward Ms. Eilert, as detailed in the previous paragraphs of this Complaint, Plaintiff has suffered, and continues to suffer, extreme emotional distress, anxiety, embarrassment, humiliation, monetary, emotional, reputational, and other personal injuries.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, jointly, severally and alternatively, for compensatory damages, including damages for emotional distress, physical injury, loss of reputation and other personal injury, back pay, front pay, reinstatement with full seniority and benefits, consequential damages, punitive damages, pre- and post-judgement interest, enhancement for tax consequences, reasonable attorney's fees, costs of suit, and any other relief this Court deems just.

### COUNT NINE -
### VIOLATION OF TITLE VII
### FAILURE TO PROVIDE REASONABLE ACCOMMODATION

124. The Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in the previous paragraph and Count of this Complaint as if fully set forth

19

herein.

125. Title VII, amended by the Pregnancy Discrimination Act of 1978, requires an employer to reasonably accommodate an employee's physical condition related to child birth or pregnancy.

126. A new mother's need to lactate during work hours is a protected medical condition that warrants reasonable accommodation. Pregnancy is a condition unique to women. Excluding pregnancy from reasonable accommodation coverage is discrimination based on gender. This same reasoning applies to the expression of breast milk.

127. Due to Plaintiff's physical condition and her request for accommodation, Defendants unilaterally and arbitrarily decided that Plaintiff could no longer be employed.

128. Despite Plaintiff's need for a reasonable accommodation, the Defendants refused to make any attempt to engage in an interactive process.

129. Plaintiff was a productive and successful employee and the requested accommodation did not pose any undue hardship to Defendants.

130. Defendants failed to make a good faith effort to provide Ms. Eilert with reasonable accommodations and this violated Title VII of the Civil Rights Act of 1964.

131. The discriminatory actions against the Plaintiff would not have occurred but for the fact of her gender and pregnancy.

132. The alleged allegations were outrageous and beyond all bounds of human decency, justifying the imposition of punitive damages against Defendants.

133. Defendants' acts were performed with malice and a reckless indifference to Ms. Eilert's protected rights.

134. The willful indifference and actual participation by Loyal Source's management creates

liability against the corporate Defendants.

135.   Upon information and belief, there may be other John Does, to be identified through discovery, participated in or made decisions to discriminate against the Plaintiff. These John Does may be later added as named parties.

136.   As a result of Defendants' intentional and outrageous actions toward Ms. Eilert, the Plaintiff has suffered, and continues to suffer, physical injuries, embarrassment, humiliation, monetary, emotional, reputational, and other personal injuries.

WHEREFORE, the Plaintiff demands judgment against the Defendants, jointly, severally and alternatively, for compensatory damages, including damages for emotional distress, physical injury, loss of reputation and other personal injury, back pay, front pay, reinstatement with full seniority and benefits, consequential damages, punitive damages, pre- and post-judgement interest, enhancement for tax consequences, reasonable attorney's fees, costs of suit, and any other relief this Court deems just.

## COUNT TEN -
## VIOLATION TITLE VII
## WRONGFUL TERMINATION

137.   Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in the previous paragraphs as if fully set forth herein.

138.   Defendants discriminated against the Plaintiff by terminating her for a reason directly related to her gender and pregnancy.

139.   The discriminatory actions against the Plaintiff would not have occurred but for the fact of her gender and pregnancy.

140.   The alleged allegations were outrageous and beyond all bounds of human decency, justifying the imposition of punitive damages against Defendants.

141. Defendants' acts were performed with malice and a reckless indifference to Ms. Eilert's protected rights.

142. The willful indifference and actual participation by Loyal Source's management creates liability against the corporate Defendants.

143. Upon information and belief, there may be other John Does, to be identified through discovery, participated in or made decisions to discriminate against the Plaintiff.  These John Does may be later added as named parties.

144. As a result of Defendants' intentional and outrageous actions toward Ms. Eilert, the Plaintiff has suffered, and continues to suffer, physical injuries, embarrassment, humiliation, monetary, emotional, reputational, and other personal injuries.

**WHEREFORE,** the Plaintiff demands judgment against the Defendants, jointly, severally and alternatively, for compensatory damages, including damages for emotional distress, physical injury, loss of reputation and other personal injury, back pay, front pay, reinstatement with full seniority and benefits, consequential damages, punitive damages, pre- and post-judgement interest, enhancement for tax consequences, reasonable attorney's fees enhanced under the New Jersey Law Against Discrimination, costs of suit, and any other relief this Court deems just.

<u>**COUNT ELEVEN -**</u>
<u>**VIOLATION OF TITLE VII - RETALIATION**</u>

145. Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in the previous paragraphs as if fully set forth herein.

146. Plaintiff forwarded both verbal and written complaints of discrimination to Defendants.

147. In retaliation for Plaintiff's complaints, Defendants refused to consider any reasonable

22

accommodation request.

148. In retaliation for Plaintiff's complaints, Defendants terminated Plaintiff.

149. Defendants violated Title VII of the Civil Rights Act of 1964. by retaliating against the Plaintiff and terminating her for a reason directly related to her complaint of discrimination.

150. The alleged allegations were outrageous and beyond all bounds of human decency, justifying the imposition of punitive damages against Defendants.

151. Defendants' acts were performed with malice and a reckless indifference to Ms. Eilert's protected rights.

152. The willful indifference and actual participation by Loyal Source management creates liability against the corporate Defendants.

153. Upon information and belief, there may be other John Does, to be identified through discovery, participated in or made decisions to discriminate against the Plaintiff. These John Does may be later added as named parties.

154. As a result of Defendants' intentional and outrageous actions toward Ms. Eilert, the Plaintiff has suffered, and continues to suffer, physical injuries, embarrassment, humiliation, monetary, emotional, reputational, and other personal injuries.

**WHEREFORE,** the Plaintiff demands judgment against the Defendants, jointly, severally and alternatively, for compensatory damages, including damages for emotional distress, physical injury, loss of reputation and other personal injury, back pay, front pay, reinstatement with full seniority and benefits, consequential damages, punitive damages, pre- and post-judgement interest, enhancement for tax consequences, reasonable attorney's fees, costs of suit, and any other relief this Court deems just.

## COUNT TWELVE – JOHN DOES

155.    The Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in the previous paragraphs and Counts as if fully set forth herein.

156.    Although the Plaintiff believes that the acts complained of were performed or caused by the named Defendants, the Plaintiff cannot be certain that the named Defendants is the only person(s) or entity(ies) liable for the acts complained of as set forth herein. Therefore, the Plaintiffs has named John Does 1 - 10, fictitious persons or legal entities as Defendant(s) to this action.

157.    As such, the terms "Defendant" or "Defendants" as used in all of the above Counts and paragraphs should therefore be defined and read as "Defendant(s) and/or John Doe(s)".

**WHEREFORE**, the Plaintiff demands judgment against the Defendants and John Does 1-10, jointly, severally, and alternatively, for such sums as would reasonably and properly compensate the Plaintiff in accordance with the laws of the State of New Jersey, together with interest and costs of suit.

By:    s/ Zachary R. Wall
Zachary R. Wall, Esquire
**WALL & LONDON LLC**
*Attorneys for the Plaintiff*

DATED: November 22, 2015

## JURY DEMAND

Plaintiffs demand trial by jury as to all of the triable issues of this complaint.

24

**DEMAND FOR DISCOVERY OF INSURANCE COVERAGE**

Demand is hereby made that you disclose to the undersigned whether there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy all of part of all of a judgment which may be entered in the action or to indemnify or reimburse for payment made to satisfy the Judgment.  If so, please attach a copy of each, or in the alternative state, under oath and certification: (a) policy number; (b) name and address of insurer; (c) inception and expiration date; (d) names and addresses of all person insured thereunder; (e) personal injury limits; (f) property damage limits; and (g) medical payment limits.

**DESIGNATION OF TRIAL COUNSEL**

The Court is hereby advised that Zachary R. Wall, Esquire, is hereby designated as trial counsel.

**CERTIFICATION OF NO OTHER ACTIONS**

It is stated that the matter in controversy is not the subject of any other action pending in any other court or of a pending arbitration proceeding to the best of our knowledge or belief.  Also, to the best of our belief, no other action or arbitration proceeding is contemplated.  Further, other than the parties set forth in this pleading, we know of no other parties that should be joined in the above action.  In addition, we recognize the continuing obligation of each party to file and serve on all parties and the Court an amended certification if there is a change in the facts stated in this original certification.

## NOTICE REGARDING NON-DESTRUCTION OF EVIDENCE

Please be advised and noticed that the Defendant(s) should refrain from destroying, disposing or altering any potential evidence in its possession which would relate in any way to this matter.

Please also be advised and noticed that this includes any and all electronic records, including but not limited to the hard drives on any and all computers and/or servers. To that end:

A.   The Defendant(s) should not initiate any procedures which would alter any active, deleted, or fragmented files. Such procedures may include, but are not limited to: storing (saving) newly created files to existing drives and diskettes; loading new software, such as application programs; running data compression and disk defragmentation (optimization) routines; or the use of utility programs to permanently wipe files, disks or drives.

B.   The Defendant(s) should stop any rotation, alteration, and/or destruction of electronic media that may result in the alteration or loss of any electronic data. Backup tapes and disks should be pulled from their rotation queues and be replaced with new tapes.

C.   The Defendant(s) should not alter and/or erase active files, deleted files, or file fragments on any electronic media that may have any relation to this matter.

D.   The Defendant(s) should not dispose of any electronic media storage devices replaced due to failure, upgrade, and/or lease expiration that may contain electronic data having any relation to this matter.

By:   s/ Zachary R. Wall
Zachary R. Wall, Esquire
*Attorneys for the Plaintiff*

DATED: November 22, 2015

26